James J. Mahon
jmahon@beckerlawyers.com
Phone: (212) 599-3322 Fax: (212) 557-0295

Becker & Poliakoff, LLP
45 Broadway, 17th Floor
New York, New York 10006



December 19, 2019

**VIA ECF AND EMAIL**
Hon. Analisa Torres, U.S.D.J.
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov

    Re:    *United States of America v. Paramount Pictures, Inc., et al.*
            **Case No. 1:19-mc-00544-AT**

Dear Judge Torres:

    The Independent Cinema Alliance ("ICA"), a trade association representing exclusively independent cinemas in North America, respectfully requests that the Court open this proceeding to certain critical perspectives it will not hear from the parties, including the voice of the express beneficiaries of the Paramount Consent Decrees, independent cinemas. As support therefor, the ICA respectfully advises as follows:

    1.    The ICA currently represents 139 dues-paying cinemas with 2,353 screens. The ICA is a non-profit corporation that promotes the preservation and prosperity of independent cinemas as an essential part of a healthy motion picture industry. Independents are essential because:

- independents serve small-town and rural markets that would typically not have a cinema but for the dedication of independents to their communities;
- hundreds of thousands of Americans who love big-screen entertainment would never see motion pictures on the big screen if independents disappeared, because the big circuits would never go into such small markets;
- independents are frequently industry innovators because they *must* innovate to find ways to survive in an industry dominated by big players;
- independents often depart (necessarily) from the Big Exhibition paradigm of featuring only the biggest Hollywood fare, and thus diversify the motion picture entertainment available to patrons (*e.g.*, art films, niche films such as Hispanic and faith-based films, and films by independent producers generally);
- independents frequently become integral components of their communities and provide services and contributions that connect the big screen to special community watersheds (film festivals, community fundraising, children's matinees, showings of classic movies, special pricing for veterans/first-responders/active military, sponsoring local events on the big screen);

December 19, 2019
Page 2

- the average ticket price for independents is significantly lower than the average ticket price for big circuits, and independents generally operate at lower margins than circuits command; and
- even in urban markets, where a few independents survive, they are the only remaining check against big circuit monopoly power, and frequently innovate in pro-consumer ways to compete (*e.g.*, family entertainment centers).

2. As an advocacy group on behalf of independent cinemas, the ICA is uniquely positioned to urge continuing respect for the Paramount Consent Decrees, which foremost seek to protect independent cinemas. The Paramount Consent Decrees happened because the Department of Justice seven decades ago valiantly stepped into an industry rife with antitrust abuse and on behalf of independents and their patrons. *See United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 162 (1948) ("The trade victims of this conspiracy have in large measure been the small independent operators. They are the ones that have felt most keenly the discriminatory practices and predatory activities in which defendants have freely indulged. They have been the victims of the massed purchasing power of the larger units in the industry. It is largely out of the ruins of the small operators that the large empires of exhibitors have been built.").

3. This Department of Justice ("DOJ") is now engaged in what is essentially a "housekeeping operation" to terminate over 1,000 so-called "legacy" consent decrees that do not include "sunset" provisions. *See* https://www.justice.gov/opa/pr/department-justice-opens-review-paramount-consent-decrees. The DOJ is accordingly painting with the broadest possible brush and failing, certainly in this case, to examine facts and circumstances that underscore the continuing positive effects of the consent decrees.

4. As part of its "housekeeping," this DOJ invited comment from the public but disregarded it, as nearly every comment submitted and published opposed termination of the Paramount Consent Decrees. The DOJ actually mischaracterized submissions by numerous commenters when it claimed to this Court that no commenter had suggested that antitrust violations would recur if the decrees were terminated. Moreover, this DOJ not only failed to condemn certain egregious anti-competitive practices identified in the Consent Decrees; it took the *opposite* tack of suggesting that some of them might be just fine. Such a sea-change in antitrust policy demands closer scrutiny in this proceeding.

5. This DOJ's hollow recitation that "general antitrust laws" suffice to prevent antitrust injury is belied by its own failure to condemn a single "anticompetitive" practice prohibited by the Decrees, and its clear understanding that antitrust litigation (which typically costs millions of dollars) will be beyond the means of any independent cinema. In other words, as every media gloss of this DOJ initiative declares, the obvious victims in this brave new world are independent cinemas. See ¶ 1 (all of which is potentially lost).

6. Nothing in existing antitrust law comes close to the elegance and power of the "theater-by-theater on the merits mandate" that forms the heart of the Paramount Consent Decrees.

{N0242458 }

Tens of thousands of Americans have enjoyed big-screen entertainment *solely* because of that mandate. The loss of that umbrella protection is another sea-change in a stable industry that warrants careful scrutiny, as it has worked for decades, and for good and powerful reasons.

7. Respectfully, nothing about this proceeding should be *pro forma*. At a minimum, the Court should consider *amicus curiae* submissions and allow sufficient length to permit a realistic description of what is happening on the ground. Ideally, the Court should open a factual inquiry as to the current structure of the industry, how the industry has fared as governed unofficially by the Paramount Consent Decrees, and the extent to which unleashed anticompetitive practices would threaten the health of the industry.

8. No existing party to this proceeding will come even close to reproducing the relevant and important perspective of independent cinemas. Indeed, this Department of Justice has embraced a philosophy of antitrust enforcement strikingly different than the philosophy that animated the original *Paramount* litigation.

Therefore, the Independent Cinema Alliance respectfully requests that the Court set a briefing schedule for *amicus curiae* parties, including the ICA, and consider a larger factual inquiry concerning the salutary role of the Paramount Consent Decrees in the motion picture industry.

_____
G. Kendrick Macdowell
Counsel, Independent Cinema Alliance
District of Columbia Bar No. 436375

_____
James J. Mahon
Becker & Poliakoff, LLP, Local Counsel for
Independent Cinema Alliance

{N0242458 }